[Cite as *State v. Harding*, 2011-Ohio-2823.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                                          :

    Plaintiff-Appellee                            :            C.A. CASE NO.    24062

v.                                                               :            T.C. NO.    10CR227

RICK A. HARDING                                    :            (Criminal appeal from
                                                 Common Pleas Court)
    Defendant-Appellant                         :

                                                        :

. . . . . . . . . .

**O P I N I O N**

Rendered on the _____10th_____ day of _____June_____, 2011.

. . . . . . . . . .

ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

BARRY S. GALEN, Atty. Reg. No. 0045540, 111 W. First Street, Suite 1000, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . .

KLINE, J. (by assignment)

{¶ 1}  Rick A. Harding (hereinafter "Harding") appeals his convictions for three counts of felonious assault by the Montgomery County Court of Common Pleas following a bench trial.  Harding contends that the trial court's determination that Harding did not act in self-defense was against the manifest weight of the

evidence. Because Harding violated his duty to retreat, we disagree. Harding also contends that the trial court erred by convicting him of felonious assault, rather than the lesser offense of aggravated assault. Because there was insufficient evidence that Harding acted under the influence of rage or passion, we disagree. Accordingly, we affirm the trial court's judgment.

I

{¶ 2} Harding stabbed Chad Waddell (hereinafter "Waddell") and David Flinchum (hereinafter "David")[1] outside the Tidy Rabbit Laundromat (hereinafter "Tidy Rabbit") on Monday, January 18, 2010. However, events in the days just prior to the incident gave rise to the confrontation between Harding, Waddell, and David.

{¶ 3} At the time of the incident, Harding was dating Jessica Flinchum (hereinafter "Jessica"). And Waddell was dating Jennifer Flinchum (hereinafter "Jennifer"). Jennifer and Jessica are twin sisters. David is their brother. On the Saturday night or early Sunday morning prior to the incident, Waddell suffered a drug overdose, and he went to the hospital. After Waddell went to the hospital, Jennifer made her way to Jessica and Harding's apartment. Jennifer and Jessica got into an argument at the apartment. Jennifer testified that, at some point, Harding began to beat her (i.e., Jennifer). Jennifer claimed that Harding gave her a black eye and kicked her in the stomach repeatedly until she urinated on herself.

---

[1] Several members of the Flinchum family testified in this case. Consequently, we will refer to members of the Flinchum family by their first names to avoid confusion.

Eventually, Jennifer left the apartment. Jennifer claimed that she chose not to file a police report of the incident because she wanted to check on Waddell at the hospital.

{¶ 4} The next day, i.e., Monday, January 18th, Jennifer, David, and Shannon Flinchum (hereinafter "Shannon") were at their parents' house. (Shannon is Jennifer, Jessica, and David's sister.) David's girlfriend, Christina Siciliano (hereinafter "Siciliano"), was also at the house. And Waddell went to the house after he was released from the hospital. At some point during the afternoon, Waddell, Jennifer, Shannon, David, and Siciliano decided to leave the house. The witnesses gave multiple reasons for leaving, including getting food for David; checking on Jessica because of alleged abuse by Harding; getting some property back from Harding; and talking to Harding "man to man" about the incident with Jennifer. Waddell and David admitted that they were angry with Harding over the incident with Jennifer, but Waddell and David each denied that they intended to harm Harding.

{¶ 5} Waddell, Jennifer, Shannon, David, and Siciliano left in Siciliano's car, and they drove towards Jessica and Harding's apartment. While they were driving, the group spotted Harding at the Tidy Rabbit. They pulled into the Tidy Rabbit's parking lot and remained in the car. Harding left the Tidy Rabbit and walked across the parking lot. Waddell and David exited Siciliano's car, and they called out to Harding as they approached him. When Waddell and David were approaching, they had their backs to the Tidy Rabbit. Harding was near the sidewalk at the end of the parking lot, and he was facing the Tidy Rabbit. As

Waddell and David approached, Harding took his jacket off and threw it on a fence at the edge of the parking lot. Harding admitted that, at that point, he could have run away, but he did not. At least one witness heard Harding say "two on one, this ain't a fair fight, you know. Why you got to jump me?" Tr. at 444.

{¶ 6} Harding then brandished a knife, but that did not deter Waddell and David. Waddell punched Harding, and Harding claimed that he fell to one knee. Harding then began swinging the knife. David attempted to grab Harding. Harding, however, swung the knife haphazardly, and several witnesses testified that "fists were flying."

{¶ 7} Waddell's version of the beginning of the fight differed. On direct examination he testified, "So I took a couple steps closer towards [Harding], and he – that's when he swung. He had the knife in his hand, and that's when he swung and he caught – he barely grazed my nose."

{¶ 8} The confrontation did not last long. An off-duty firefighter EMT happened to be stopped at a red light at a nearby intersection, and he noticed the confrontation develop. The firefighter witnessed the fight begin, and, as he approached the Tidy Rabbit's parking lot, he briefly activated the siren on his vehicle. The fighting stopped as soon as the firefighter activated the siren. Harding quickly left the scene. Shortly thereafter, Waddell and David realized that they had been stabbed. Waddell and David were treated at the scene and later taken to the hospital. Medical personnel determined that David's injuries carried the possibility of serious internal injury. Consequently, David underwent a lengthy surgery. Harding made his way to his parents' house. Eventually, Harding's

father contacted the police, and the police arrested Harding at his parents' house.

{¶ 9} Harding was charged with three counts of felonious assault and one count of tampering with evidence. The trial court conducted a bench trial on the matter. At the close of the State's case, the trial court dismissed the tampering with evidence count. Harding testified on his own behalf, and he testified that he acted in self-defense. The trial court found Harding guilty on three counts of felonious assault. Following the verdict, Harding filed a motion requesting the trial court to reconsider its verdict. Specifically, Harding requested that the trial court find Harding guilty of the lesser offense of aggravated assault, instead of felonious assault. The trial court denied Harding's motion. The trial court sentenced Harding to a total of three years in prison for his felonious assault convictions.

{¶ 10} Harding appeals and asserts the following assignments of error: I. "THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST THE DEFENDANT FOR FELONIOUS ASSAULT WHEN THE MANIFEST WEIGHT OF THE EVIDENCE PROVED BY A PREPONDERANCE OF THE EVIDENCE THAT DEFENDANT-APPELLANT ACTED IN SELF-DEFENSE." And, II. "THE TRIAL COURT ERRED IN NOT FINDING THE DEFENDANT GUILTY OF THE LESSER OFFENSE OF AGGRAVATED ASSAULT WHEN THERE WAS SUBSTANTIAL EVIDENCE DEMONSTRATING SERIOUS PROVOCATION."

II

{¶ 11} In his first assignment of error, Harding contends that the trial court's determination that Harding did not act in self-defense was against the manifest weight of the evidence.

{¶ 12} "A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences is the more believable or persuasive. * * * This court, in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the trier-of-fact lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Rowland*, Montgomery App. No. 20625, 2005-Ohio-3756, at ¶5.

{¶ 13} "The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. *State v. DeHass* (1997), 10 Ohio St.2d 230, 231[.] 'Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness.' *State v. Lawson* (Aug. 22, 1997), Montgomery App. No. 16288." *State v. Key*, Montgomery App. No. 22609, 2009-Ohio-422, at ¶25.

{¶ 14} "This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict." Id. at ¶26, citing *State v. Bradley* (Oct. 24, 1997), Champaign App. No. 97-CA-03.

{¶ 15} Harding argues that the trial court should have ruled that Harding

acted in self-defense when he stabbed Waddell and David. Self-defense is an affirmative defense, and the accused has the burden of proving that he acted in self-defense by a preponderance of the evidence. R.C. 2901.05(A); *State v. Jackson* (1986), 22 Ohio St.3d 281, 283. Stabbing a victim (or victims) with a knife constitutes the use of deadly force. See *State v. Sims*, 2005-Ohio-5846, at ¶17; *State v. Densmore*, Henry App. No. 7-08-4, 2009-Ohio-6870, at ¶28; *State v. Hansen*, Athens App. No. 01CA15, 2002-Ohio-6135, at ¶29. Consequently, to satisfy his burden, Harding had to meet the standard for self-defense through the use of deadly force.

{¶ 16} To establish self-defense through the use of deadly force, "a defendant must prove the following elements: (1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger." *State v. Barnes*, 94 Ohio St.3d 21, 24, 2002-Ohio-68, citing *State v. Robbins* (1979), 58 Ohio St.2d 74. "[T]he elements of self-defense are cumulative. * * * If the defendant fails to prove *any one* of these elements by a preponderance of the evidence he has failed to demonstrate that he acted in self-defense." *Jackson* at 284 (emphasis sic).

{¶ 17} Even assuming Harding satisfied the first two elements of the self-defense test, he violated his duty to retreat. The evidence was clear that Waddell and David approached Harding from the direction of the Tidy Rabbit, and

Harding was standing near the sidewalk. Although Waddell and David approached at a brisk pace, Harding had time to remove his coat and prepare for the confrontation. Harding was aware that Waddell and David intended to fight him. Harding testified that David and Waddell were speaking aggressively as they approached. And at least one witness stated that Harding said, "two on one, this ain't a fair fight, you know. Why you got to jump me?" Tr. at 444. Harding was not surrounded, and he could have avoided the confrontation by going in either direction on the sidewalk.

{¶ 18} Additionally, on cross-examination, Harding admitted that he could have run away in the five seconds it took Waddell and David to get close to him. Specifically, Harding testified as follows:

{¶ 19} "Q. From the time that David and [Waddell] finally got close to you –

{¶ 20} "* * *

{¶ 21} "Q. – was about five seconds?

{¶ 22} "A. Yes.

{¶ 23} "* * *

{¶ 24} "Q. And in that five seconds, you decided not to take off, is that correct?

{¶ 25} "A. Correct.

{¶ 26} "Q. Not to run?

{¶ 27} "A. Correct.

{¶ 28} "Q. Not to yell out for help?

{¶ 29} "A. Correct.

{¶ 30} "Q.   Not to do anything but pull out your knife?   Correct?

{¶ 31} "A.   Yes.

{¶ 32} "Q.   And you had every opportunity to run away, didn't you?   Didn't you?

{¶ 33} "A.   It could have happened.

{¶ 34} "Q.   You could have run away?

{¶ 35} "A.   *I could have.*"   Tr. at 504 (emphasis added).

{¶ 36} Thus, the evidence demonstrated that Harding could have retreated from the danger caused by Waddell and David, but Harding did not.   Therefore, Harding violated his duty to retreat, and his self-defense argument fails.   *See State v. Wilson*, Montgomery App. No. 22581, 2009-Ohio-525, at ¶43.

{¶ 37} Therefore, we find that substantial evidence showed that Harding violated his duty to retreat.   We cannot find that the trier-of-fact lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.   Consequently, the trial court's determination that Harding failed to prove that he acted in self-defense was not against the manifest weight of the evidence.

{¶ 38} Accordingly, we overrule Harding's first assignment of error.

III

{¶ 39} In his second assignment of error, Harding contends that the trial court erred by finding him guilty of felonious assault as opposed to the lesser offense of aggravated assault.

{¶ 40} "The trial court's decision to allow the finder of fact, whether a jury or

the court itself in a bench trial, to consider a lesser-included offense will be reviewed on appeal under an abuse-of-discretion standard." *State v. Cain*, Franklin App. No. 06AP-1252, 2007-Ohio-6181, at ¶7 (citation omitted). "The court may submit consideration of the lesser-included offense to the finder of fact where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser-included offense." Id. citing *State v. Thomas* (1988), 40 Ohio St.3d 213, at paragraph two of the syllabus.

{¶ 41} R.C. 2903.12 defines aggravated assault. This statute provides, in relevant part, as follows: "(A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly: (1) Cause serious physical harm to another[.]"

{¶ 42} In a felonious assault case, the trier of fact must consider an aggravated assault charge when sufficient evidence of serious provocation by the victim (or victims) exists. *State v. Mack*, 82 Ohio St.3d 198, 200, 1998-Ohio-375; see, also, *State v. Deem* (1988), 40 Ohio St.3d 205, paragraph four of the syllabus. "To be serious, the provocation 'must be reasonably sufficient to incite or arouse the defendant into using deadly force.' *Deem*[,] at paragraph five of the syllabus, citation omitted. In the context of aggravated assault, the evaluation of whether provocation is reasonably sufficient to constitute serious provocation is a two-part analysis. [*Mack* at 201]. First, an objective standard must be applied to determine whether the provocation is sufficient to 'arouse the passions of an

ordinary person beyond the power of his or her control,' and to bring on a sudden passion or fit of rage. *Id.,* citing *State v. Shane* (1992), 63 Ohio St.3d 630, 634-35[.]  If the objective standard is satisfied, then a subjective standard must be applied to determine whether the defendant in a particular case was actually 'under the influence of sudden passion or in a sense of sudden rage.'  *Mack* [] at 201[,] citing *Shane* [] at 634-35[.]"  *State v. Moore*, Montgomery App. No. 20005, 2004-Ohio-3398, at ¶14.

{¶ 43} When analyzing the subjective prong of the test, "[e]vidence supporting the privilege of self-defense, i.e., that the defendant feared for his own personal safety, does not constitute sudden passion or fit of rage."  *State v. Stewart*, Franklin App. No. 10AP-526, 2010-Ohio-466, at ¶13, citing *State v. Tantarelli* (May 23, 1995), 10th Dist. No. 94APA11-1618.  See, also, *Mack* at 201; *State v. McClendon*, Montgomery App. No. 23558, 2010-Ohio-4757, at ¶23 ("[T]here was insufficient subjective evidence that Defendant was actually acting under the influence of sudden passion or in a sudden fit of rage.  Rather, Defendant shot Driscoll out of fear because he was afraid Driscoll might be retrieving a weapon out of his coat.  Fear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or a sudden fit of rage.") (citations omitted), vacated, in part, on other grounds by *State v. McClendon*, 128 Ohio St.3d 354, 2011-Ohio-954.

{¶ 44} Here, even assuming Harding satisfied the objective prong, he failed to satisfy the subjective prong of the serious provocation test.  There is simply no evidence that Harding acted out of rage or passion when he stabbed Waddell and

David. In fact, Harding testified at length that he was motivated by fear and that he acted in self-defense.

{¶ 45} Harding repeatedly described his emotions during the incident with words such as "scared" and "fear." On direct examination, Harding was asked what was going through his mind as Waddell and David approached him. Harding responded, "Scared. Fear for life basically because I've been beaten up basically – well yeah beaten up by David before and another dude." Tr. at 478. Later, Harding testified that, as Waddell and David approached, "I'm scared because both of them or, you know, I know I'm about to get my ass beat by two dudes." Id. at 480.

{¶ 46} Harding also indicated that, during the confrontation with Waddell and David, Harding suffered from a "blackout." Harding testified that he suffers from blackouts "when I'm scared for my life – when I'm scared. Fear." Id. at 490. Additionally, Detective William Ring interviewed Harding shortly after Harding's arrest. Ring testified that Harding said that he blacked out during the incident due to "scaredness." Id. at 369.

{¶ 47} Thus, there is no subjective evidence that Harding was actually "under the influence of sudden passion or in a sense of sudden rage." *Mack* at 201. Instead, the evidence was clear that fear motivated Harding's actions during the incident. Therefore, we find that the trial court did not abuse its discretion when it determined that there was insufficient evidence to consider the offense of aggravated assault.

{¶ 48} Accordingly, we overrule Harding's second assignment of error.

IV

{¶ 49} In conclusion, having overruled both of Harding's assignments of error, we affirm the decision of the trial court.

. . . . . . . . . .

FAIN, J. and DONOVAN, J., concur.

(Hon. Roger L. Kline, Fourth District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

Andrew T. French
Barry S. Galen
Hon. Timothy N. O'Connell