[Cite as *State v. Beatty-Jones*, 2011-Ohio-3719.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO               :

                         :       Appellate Case No.   24245

     Plaintiff-Appellee        :

                         :       Trial Court Case No.   10-CR-983

v.                             :

                         :

CHRISTOPHER S. BEATTY-JONES    :       (Criminal Appeal from

                         :        Common Pleas Court)

     Defendant-Appellant       :

                         :

. . . . . . . . . . .

O P I N I O N

Rendered on the 29th day of July, 2011.

. . . . . . . . .

MATHIAS H. HECK, JR., by R. LYNN NOTHSTINE, Atty. Reg. #0061560, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
     Attorneys for Plaintiff-Appellee

WILLIAM O. CASS, JR., Atty. Reg. #0034517, 3946 Kettering Boulevard, Suite 202, Kettering, Ohio 45439
     Attorney for Defendant-Appellant

. . . . . . . . .

HALL, J.

{¶ 1} Christopher Beatty-Jones appeals his convictions for attempting to murder one security guard and murdering another security guard. We will affirm.

**I**

**{¶ 2}**   One night in March 2010, James Locker, 50 years old, and William St. Peter, 54, were patrolling the Western Manor Apartment complex. They were security guards for Moonlight Security, hired by Western Manor to keep watch. Both men were in uniform and carried pepper spray and a handgun. Shortly after midnight, St. Peter noticed a pickup truck with its rear cab-lights on parked in a guest parking lot. St. Peter told Locker about the truck, and they decided to investigate.

**{¶ 3}**   In the passenger seat, they discovered a woman sleeping. After waking her, Locker and St. Peter learned that her name was Jodi Grigsby and that she was waiting for "Chris" (Beatty-Jones) to return from one of the apartments. She told them that neither she nor Chris lived there and that she did not know which apartment Beatty-Jones was visiting or the purpose of his visit. Locker took notes and then radioed Moonlight Security dispatch about the encounter. After waiting for roughly 15 minutes, Locker told St. Peter to go stand at the corner of the nearest apartment building and wait for Beatty-Jones. Locker then called Dayton Police and requested assistance. A short time later, Beatty-Jones came around the corner. St. Peter fell in behind him and told Beatty-Jones to walk to the truck, where Locker was waving him over. Locker asked Beatty-Jones his name, and he replied, "Chris Jones." Locker told him that he had called the police and that they were on their way.

**{¶ 4}**   Locker instructed Beatty-Jones to empty his pockets onto the hood of the truck, for his and St. Peter's protection, and then he began to pat down the outside of the defendant's clothing. As he got near the front of Beatty-Jones's waistband, Locker said, "What have we got here?" Suddenly, Beatty-Jones pushed away from the truck. Locker and St. Peter grabbed him and a struggle began. Several times, Locker told Beatty-Jones to calm down and

reminded him that the police were on their way. St. Peter was knocked down, and when he got up, Locker told him to spray Beatty-Jones with pepper spray. St. Peter managed to spray one side of Beatty-Jones's face and then the other. St. Peter then got his arm around Beatty-Jones in a headlock and tried to wrestle him to the ground.

{¶ 5} As St. Peter and Beatty-Jones were struggling, Beatty-Jones's shirt came up and Locker saw a handgun tucked into his front waistband. Locker yelled, "He's got a gun!" Beatty-Jones immediately pulled out the gun, aimed it at St. Peter, and pulled the trigger at least four times, hitting him in his bulletproof-vest-protected chest, his side, his forearm and his thumb. The impact of the shots knocked St. Peter to the ground. Beatty-Jones then trained his gun on Locker and pulled the trigger another four or five times. When St. Peter stumbled to his feet and turned around, he saw Locker lying on the ground and saw Beatty-Jones running away. Neither St. Peter nor Locker had fired a shot, and the evidence could reasonably be construed to the effect that they had not even drawn their weapons.

{¶ 6} Beatty-Jones was arrested later that morning in his home. A few days later, Locker died.

{¶ 7} Beatty-Jones was charged with six felonies each accompanied by a 3-year firearm specification, see R.C. 2941.145. Of the six charges, St. Peter was the victim in three: felonious assault (serious physical harm), R.C. 2903.11(A)(1); felonious assault (deadly weapon), R.C. 2903.11(A)(2); and attempted felony-murder, R.C. 2923.02(A) and 2903.02(B). Locker was the victim in the other three charges: felonious assault (serious physical harm), felonious assault (deadly weapon), and felony murder, R.C. 2903.02(B). A jury found Beatty-Jones guilty of all six offenses and found true all the firearm specifications. For sentencing purposes, the trial court merged the charges in which St. Peter was the victim

into the charge of attempted felony-murder and merged the accompanying firearm specifications into a single specification. The court did the same for the charges and their specifications in which Locker was the victim, merging them into the charge of felony murder and merging the firearm specifications into one. The court sentenced Beatty-Jones to 22-years-to-life in prison for attempted murder and murder and to 6 years in prison for the two 3-year firearm specifications.

{¶ 8}   Beatty-Jones appealed.

## II

{¶ 9}   Beatty-Jones now assigns four errors for our review.

**First Assignment of Error**

{¶ 10} "THE COURT ERRED WHEN IT REFUSED TO MERGE ALL OF THE FIREARM SPECIFICATIONS BECAUSE THEY WERE COMMITTED IN THE SAME ACT OR TRANSACTION."

{¶ 11} The sentencing statute in effect requires a court to merge into a single specification all the firearm specifications attached to felonies committed in the same "transaction." See R.C. 2929.14(D)(1)(b). Here the trial court determined that, because there were two victims, there were two transactions. Beatty-Jones contends that there was only one. We agree with the trial court.

{¶ 12} "Transaction" here means "a series of continuous acts bound together by time, space and purpose, and directed toward a single objective." *State v. Wills* (1994), 69 Ohio St.3d 690, 691 (Citation omitted.). The commission of multiple crimes constitutes only one transaction if "the defendant 'had a common purpose in committing [the] crimes' and engaged

in a 'single criminal adventure.'" *State v. Like*, Montgomery App. No. 21991, 2008-Ohio-1873, at ¶40 (Citation omitted.). When the crimes create multiple victims, there is a single transaction if the evidence shows that the defendant's criminal objectives were focused on each victim individually (e.g., murdering/raping/robbing this victim) rather than on something more abstract (e.g., robbing this car, regardless of who is inside; shooting into a crowd, regardless of who is in it). Therefore "[t]he focus of the inquiry is 'on the defendant's overall criminal objectives.'" *State v. Stevens*, 179 Ohio App.3d 97, 2008-Ohio-5775, at *¶*5 (Citation omitted.).

**{¶ 13}** Beatty-Jones had two separate criminal objectives, one focused on St. Peter and one on Locker. See *State v. Hughes* (Jan. 21, 1999), Cuyahoga App. No. 73279 (concluding that the trial court did not err by finding two objectives where defendant was convicted of murdering one police officer and attempting to murder a second during a shootout). Had he not succeeded in attempting to murder, specifically, St. Peter or succeeded in murdering, specifically, Locker he would not have reached his criminal objectives.

**{¶ 14}** Although not argued by the state, we note that the "same transaction" rule does not actually apply here. Identified explicitly in R.C. 2929.14(D)(1)(b) is the exception to the rule in R.C. 2929.14(D)(1)(g), which states:

**{¶ 15}** "If an offender is convicted of or pleads guilty to two or more felonies, if one or more of those felonies is aggravated murder, murder, attempted aggravated murder, attempted murder, aggravated robbery, felonious assault, or rape, and if the offender is convicted of or pleads guilty to a specification of the type described under division (D)(1)(a) of this section in connection with two or more of the felonies, the sentencing court shall impose on the offender the prison term specified under division (D)(1)(a) of this section for

each of the two most serious specifications of which the offender is convicted or to which the offender pleads guilty and, in its discretion, also may impose on the offender the prison term specified under that division for any or all of the remaining specifications."

**{¶ 16}** Each of the felony types that Beatty-Jones was convicted of (felonious assault, attempted murder, murder) is listed in the exception. And in connection with each he was convicted of a division (D)(1)(a) firearm specification (the one described in R.C. 2941.145). For the firearm specifications, therefore, the court was required, by law, to impose two prison terms. See *State v. Cash*, Summit App. No. 24975, 2010-Ohio-4454, at ¶20 (affirming the trial court's imposition of two 3-year terms for firearm specifications as complying with R.C. 2929.14(D)(1)(g)).

**{¶ 17}** The first assignment of error is overruled.

**Second Assignment of Error**

**{¶ 18}** "THE COURT ERRED WHEN IT REFUSED THE APPELLANT'S REQUEST FOR INSTRUCTIONS ON THE INFERIOR OFFENSES OF VOLUNTARY MANSLAUGHTER, ATTEMPTED MANSLAUGHTER AND AGGRAVATED ASSAULT."

**{¶ 19}** A trial court does not err by declining to instruct a jury on a particular matter if its decision is not an abuse of discretion, meaning that the decision is not arbitrary, unconscionable, or unreasonable. *State v. Davis*, Montgomery App. No. 21904, 2007-Ohio-6680, at ¶14, quoting *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219. The trial court's jury-instruction decision here was none of these.

**{¶ 20}** In a proper case, a jury may consider, in addition to the offense actually

indicted, inferior degrees of the indicted offense. See *State v. Deem* (1988), 40 Ohio St.3d 205, at paragraph one of the syllabus (citing R.C. 2945.74 and Crim.R. 31(C)). An offense is of an inferior degree if its elements are "identical to or contained within the indicted offense, except for one or more additional mitigating elements." Id. at paragraph two of the syllabus. A trial court must charge the jury on an inferior offense if the evidence presented at trial reasonably supports, in addition to an acquittal on the indicted offense, a conviction on the inferior offense. Id. at paragraph one of the syllabus; *Davis*, at ¶21.

{¶ 21} Voluntary manslaughter is an inferior degree of murder, *State v. Shane* (1992), 63 Ohio St.3d 630, 632, making attempted manslaughter an inferior degree of attempted murder (because the "attempted offense" is murder). And aggravated assault is an inferior degree of felonious assault. *Deem*, at paragraph four of the syllabus. The mitigating element common to these three inferior offenses is that the defendant acted "while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force." R.C. 2903.03(A) (voluntary manslaughter); R.C. 2903.12(A) (aggravated assault). Beatty-Jones argues that the evidence reasonably supports finding that he acted under a sudden passion or in a fit of rage, so, he contends, the trial court should have instructed the jury on these inferior offenses.

{¶ 22} The analysis of this mitigating element involves two questions–the first objective, the second subjective. The objective question is whether the provocation was "sufficient to arouse the passion of an ordinary person beyond the power of his or her control," or described differently, whether the provocation was "reasonably sufficient to bring on extreme stress and * * * to incite or arouse the defendant into using deadly force." See

*State v. Thornton*, Montgomery App. No. 20652, 2005-Ohio-3744, at ¶51, quoting *Shane*, at 635 (the first quotation), and *Deem*, at paragraph five of the syllabus (the second quotation). The subjective question is whether this particular defendant was in fact acting under a sudden passion or in fit of rage. *Thornton*, at ¶51.

{¶ 23} Here, assuming sufficient provocation (an assumption with weak evidentiary support), the evidence shows that Beatty-Jones shot St. Peter and Locker, not under a sudden passion or in fit of rage, but out of fear. "Fear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage." *State v. Mack* (1998), 82 Ohio St.3d 198, 201. Beatty-Jones's own testimony provides the evidence: "I know I have a weapon on my person. I see it's exposed. I hear gun. All I can think is he's going to pull a gun and he's going to shoot me. I've got a gun * * * That's all that's going through my mind because of what type of area I'm in, what's going on, what usually happens over there, all types of things. So, all I could think is I'm about to get shot * * * So, I need to react." (Tr. 776). On cross examination Beatty-Jones made it clear that fear compelled his actions:

{¶ 24} "Q * * * [I]t's your story that you fired on St. Peter on purpose because you thought he was going to shoot you. Is that your story?

{¶ 25} "A That's my story.

{¶ 26} "Q Okay. And it's also true that you fired on Lieutenant Locker on purpose, right?

{¶ 27} "A Yes, I did.

{¶ 28} "Q For the same reason, is that right?

{¶ 29} "A Yes."

(Tr. 791).

**{¶ 30}** While there is also testimony from Beatty-Jones that he was feeling anger, frustration, and pain–"a lot of emotions at one time" (Tr. 772)–at being, in his view, unjustly detained, the above-quoted testimony shows that fear was the overriding and motivating emotion. See *State v. McClendon*, Montgomery App. No. 23558, 2010-Ohio-4757, at ¶23 ("[T]here was insufficient subjective evidence that Defendant was actually acting under the influence of sudden passion or in a sudden fit of rage. Rather, Defendant shot [the victim] out of fear because he was afraid [the victim] might be retrieving a weapon out of his coat. Fear alone is insufficient.") (Citations omitted), vacated, in part, on other grounds 128 Ohio St.3d 354, 2011-Ohio-954. Given the evidence, we cannot say that the trial court's conclusion was arbitrary or unreasonable that the evidence does not support conviction of the inferior offenses. See *State v. Harding*, Montgomery App. No. 24062, 2011-Ohio-2823, at ¶47 (concluding the same where the evidence was clear that fear was the motivating factor behind the defendant's actions).

**{¶ 31}** The second assignment of error is overruled.

**Third Assignment of Error**

**{¶ 32}** "THE APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**{¶ 33}** A conviction is contrary to the manifest weight of the evidence if the evidence weighs heavily against the conviction. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387 (Citation omitted). Beatty-Jones contends that the evidence weighs heavily in favor of finding that he acted in self defense. We disagree.

{¶ 34} "Self defense is an affirmative defense which the accused has the burden to prove by a preponderance of the evidence." *State v. Kleekamp*, Montgomery App. No. 23533, 2010-Ohio-1906, at ¶52, citing R.C. 2901.05(A). The evidence must establish three elements: "(1) the defendant was not at fault in creating the violent situation, (2) the defendant had a bona fide belief that she was in imminent danger of death or great bodily harm and that her only means of escape was the use of force, and (3) that the defendant did not violate any duty to retreat or avoid the danger." *State v. Goff*, 128 Ohio St.3d 169, 2010-Ohio-6317, at ¶36 (Citation omitted.). We need go no further than the first two elements to conclude that the evidence does not weigh heavily in favor of self defense.

{¶ 35} The first element requires evidence showing that the defendant "[did] not engage[] in such wrongful conduct toward his assailant that the assailant was provoked to attack the defendant." *State v. Gillespie*, 172 Ohio App.3d 304, 2007-Ohio-3439, at ¶17. Here the pertinent evidence shows that Beatty-Jones had a handgun in his waistband. Beatty-Jones testified that he shot St. Peter and Locker because he believed that, after they saw he had a gun, they would start shooting at him. It was unlawful for Beatty-Jones to be carrying a concealed handgun, see R.C. 2923.12(A)(2), without authorization, see R.C. 2923.12(C)(1)(a) and (b), or without a valid license, see R.C. 2923.12(C)(2). There is no evidence that Beatty-Jones was either authorized or possessed a license. Therefore, given the evidence, the jury could have reasonably found that Beatty-Jones was at fault in creating the situation in which he believed self defense was necessary.

{¶ 36} To establish the second element, the evidence must satisfy a test that is partly objective and partly subjective. *State v. Robinson* (1999), 132 Ohio App.3d 830, 837, citing *State v. Thomas* (1997), 77 Ohio St.3d 323, 330. To satisfy the objective part, the evidence

must show that, "considering all of the defendant's particular characteristics, knowledge, or lack of knowledge, circumstances, history, and conditions at the time of the attack," the defendant reasonably believed that he was in imminent danger. Id. at 330-331. And to satisfy the subjective part, the evidence must show that the defendant honestly believed that he was in imminent danger. Id. at 331. The pertinent evidence here shows that Beatty-Jones knew, before the struggle, that St. Peter and Locker were security guards. He had emptied his pockets at their request. The evidence also shows that Locker said several times that he had called the police and they were on the way. Beatty-Jones was not threatened by either St. Peter or Locker, nor had either man drawn his gun before Beatty-Jones started shooting. Based on this evidence, the jury could have reasonably found that Beatty-Jones's suggested belief that St. Peter and Locker were about to start shooting at him was not reasonable. Since the evidence does not weigh heavily in favor of finding Beatty-Jones's belief reasonable, we need not address whether he honestly held it.

{¶ 37} The third assignment of error is overruled.

**Fourth Assignment of Error**

{¶ 38} "THE APPELLANT COULD BE CONVICTED OF ONLY ONE COUNT OF FELONIOUS ASSAULT FOR EACH VICTIM."

{¶ 39} The Ohio Supreme Court has made it clear that "R.C. 2941.25(A) protects a defendant only from being *punished* for allied offenses." (Emphasis added.) *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, at paragraph three of the syllabus. The Court has also pertinently said:

{¶ 40} "When confronted with allied offenses, courts must be guided by two

principles: that R.C. 2941.25(A) prohibits 'convictions' for allied offenses and that the state controls which of the two allied offenses the defendant will be sentenced on.

{¶ 41} "When the state elects which of the two allied offenses to seek sentencing for, the court must accept the state's choice and merge the crimes into a single conviction for sentencing and impose a sentence that is appropriate for the merged offense. Thereafter, a 'conviction' consists of a guilty verdict and the imposition of a sentence or penalty. The defendant is not 'convicted' for purposes of R.C. 2941.25(A) until the sentence is imposed." *Whitfield*, at ¶23-24.

{¶ 42} Here, before sentencing, the trial court merged the offenses into attempted murder and murder. Beatty-Jones contends that the court should have merged these offense before submitting the case to the jury. By failing to do so, Beatty-Jones asserts, the jury "convicted" him of multiple allied offenses, violating R.C. 2941.25(A).

{¶ 43} Beatty-Jones was charged with and found guilty of six offenses, and the trial court imposed a sentence for two of them. Therefore, for purposes of R.C. 2941.25, he was "convicted" of only two offenses. We see no error.

{¶ 44} The fourth assignment of error is overruled.

### III

{¶ 45} Having overruled each assignment of error presented, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

DONOVAN and FROELICH, JJ., concur.

Copies mailed to:

Mathias H. Heck, Jr.
R. Lynn Nothstine
William O. Cass, jr.
Hon. Michael Tucker