**[Cite as *State v. Elliott*, 2014-Ohio-4958.]**

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

STATE OF OHIO

       Plaintiff-Appellee

v.

JOSEPH ELLIOTT

       Defendant-Appellant

Appellate Case No.    26104

Trial Court Case No.   2013-CR-1476

(Criminal Appeal from
 Common Pleas Court)

. . . . . . . . . . .

# O P I N I O N

Rendered on the 7th day of November, 2014.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by KIRSTEN A. BRANDT, Atty. Reg. No. 0070162, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

CHARLES W. SLICER, III, Atty. Reg. No. 0059927, 111 West First Street, Suite 518, Dayton, Ohio 45402
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1}    Defendant-appellant, Joseph Elliott, appeals from the decision of the Montgomery County Court of Common Pleas denying his motion to instruct the jury on the offense of aggravated assault.  For the reasons outlined below, the judgment of the trial court will be affirmed.

### Facts and Course of Proceedings

{¶ 2}    On June 4, 2013, Elliott was indicted on one count of felonious assault in violation of R.C. 2903.11(A)(2) (deadly weapon), as well as one count of felonious assault in violation of R.C. 2903.11(A)(1) (serious physical harm), both felonies of the second degree. Elliott stood mute at his arraignment and on June 6, 2013, the trial court entered a plea of not guilty on his behalf.   Thereafter, the case proceeded to a jury trial on January 28, 2014, wherein the following facts were elicited at trial.

{¶ 3}    On May 8, 2013, Elliott picked up his cousin, Tammy Reynolds, at her sister's house in Dayton, Ohio, so that she could help him sell a ring and leather jacket.  Reynolds testified that Elliott also wanted to sell a flat screen television and that she thought her friend, Kevin McKee, might be interested in purchasing it.  Reynolds called McKee, and McKee made arrangements to purchase the television.  McKee was at a friend's house in Dayton, so Reynolds and Elliott picked up McKee in Elliott's van.  Elliott and McKee had never met prior to that occasion.

{¶ 4}    According to Reynolds and McKee, the three of them went back to Elliott's trailer in Miamisburg to pick up the television, which McKee purchased for $80 in cash.   After

McKee purchased the television, all three of them drove to Moraine to drop off the television at McKee's mother's house. Thereafter, they all returned to Elliott's trailer. Later in the evening, Reynolds, McKee and Elliott picked up McKee's friend, Samantha Peters, from Dayton and again returned to Elliott's trailer in Miamisburg.

{¶ 5} McKee and Reynolds testified that they played cards at the trailer and that they were not using drugs. They also testified that Elliott was going in and out of the trailer leaving for periods of time. Reynolds also testified that she saw Elliott with a crack stem.

{¶ 6} Elliott, however, testified that they went back to his trailer to have a party. He claimed that McKee had crack cocaine and that they used it and made trips selling it around Miamisburg. Elliott also testified that a woman he knew as "Tracy" stopped by his trailer and purchased some crack cocaine from McKee. According to Elliott, McKee gave Tracy the drugs without full payment, because she promised to come back and pay the full amount. Elliot testified that when she did not come back after four hours, McKee asked Elliott to drive him to Tracy's house so that he could collect his money. McKee and Reynolds, on the other hand, testified that Elliott wanted to go on a run for money and specifically asked McKee to go with him.

{¶ 7} There is no dispute that Elliott and McKee left the trailer at that point in time. There is also no dispute that they left in Elliott's van with Elliott driving and McKee riding as passenger. In addition, the parties do not dispute that the two men physically fought in the van and that the van crashed near the intersection of Chautauqua Road and Farmington Road in Miamisburg. Moreover, both McKee and Elliott testified that they continued to fight after the van crashed, and Elliott also admitted to purposely running over McKee with his van. However,

Elliott and McKee provided different versions of why and how the fight occurred.

{¶ 8} McKee testified that he was looking down, texting on his phone when Elliott struck him in the head with a black object while he was driving. McKee claimed that while he was momentarily in shock, Elliott hit him two more times. Thereafter, McKee testified that he tried to grab Elliott and hold his arms while he was driving, and during the struggle, Elliott crashed the vehicle into a tree or fence.

{¶ 9} Continuing, McKee testified that after the crash, he was on top of Elliott in the driver's seat fighting with him. He also testified that Elliott unlocked the driver's side door and they both tumbled out of the van and continued fighting in the field where they had crashed. At that point, McKee claimed he was underneath Elliott when Elliott grabbed a log and hit or stabbed him with it. McKee testified he then kicked Elliott and attempted to run away. As he was attempting to escape, he testified that Elliott returned to the van and ran him over.

{¶ 10} After Elliott ran him over, McKee testified that Elliott stopped the van and got out to check on him. McKee tried to get up and run, but was unable to do so because he was in severe pain. He then testified that Elliott got back in the van and tried to run him over one more time, but that he was able to move out of the way causing Elliott to crash into a tree. When Elliott crashed, McKee said he was able to hide in some bushes. Following that, McKee testified that Elliott drove around looking for him and eventually left a short time later.

{¶ 11} Elliott, on the other hand, testified that the fight started because he informed McKee that Tracy did not have the money she allegedly owed him. He claimed McKee told him that either he or Tracy would have to pay him. Elliott testified that while he was driving, McKee pushed his head and said: "Man, you're going to get me my money." Trial Trans. Vol. II (Jan.

29, 2013), p. 245. Elliott also testified that he pushed McKee back, and they began fighting in the van.

{¶ 12} As they were fighting, Elliott testified that he wrecked into a ditch. According to Elliott, McKee was on top of him in the car when he unlocked the driver's side door and they tumbled out and hit the ground where they continued fighting. He testified that after they threw quite a few punches, he got back in the van. When he entered the van he saw McKee standing in front of the van pointing a small gun at him. In response, Elliott testified that he pushed on the gas and ran over McKee. He further testified that he stopped and looked back, saw McKee get up, and then left the scene.

{¶ 13} Reynolds testified that Elliot returned to his trailer without McKee and that he had a lot of blood on him, but did not appear to be injured. She and Peters demanded Elliott take them to McKee. According to Reynolds, Elliott drove them down the road and ordered them out of the car, leaving them stranded.

{¶ 14} Meanwhile, McKee called 9-1-1 and was discovered by police in his boxer shorts and socks 850 feet from where the van crashed. Officers on the scene observed vegetation in the road, a small wire fence knocked down, tire tracks and pieces of a bumper, headlight, and bug shield in the field where Elliot and McKee were fighting, as well as clothes belonging to McKee strewn around the area. No weapon or drugs were found on McKee nor were any discovered at the scene.

{¶ 15} When the police located Elliott's van, it was found to have a damaged bumper, bug shield, and headlights. There was also vegetation near the windshield wipers and on the grill above the hood. A chain and screwdriver were found on the front floorboard. Blood was

also discovered on the steering wheel, driver's seat headrest, center console, and back seat floorboard. The outside of the van also had blood on the lower, front bumper. Lab testing confirmed that the blood from the bumper and headrest came from McKee. McKee and Elliott could not be excluded as contributors to DNA found on the metal part of the screwdriver.

{¶ 16} As a result of the incident, McKee sustained multiple serious injuries that required hospitalization for weeks and a number of surgeries. The police observed that McKee's head and face were severely swollen and bloody and that he had tire tread marks on parts of his body. Prior to trial, the parties stipulated that McKee suffered "serious physical harm" as defined by the Ohio Revised Code. In contrast to McKee's injuries, the police found Elliott approximately two and one-half hours later with only a slight black eye, red knuckles, and a scratch on his nose.

{¶ 17} At the close of trial, but before the trial court instructed the jury, Elliott's counsel moved the trial court to include jury instructions on aggravated assault and self-defense. From the bench, the trial court ruled that it would instruct the jury on self-defense, but not aggravated assault. The court's ruling was based on its determination that aggravated assault was not a lesser-included offense of felonious assault. The trial court also stated that it questioned whether the provocation element of aggravated assault was established at trial. Immediately after the court's ruling, Elliott's counsel noted an objection to the decision on the record.

{¶ 18} After the jury deliberated, it found Elliott guilty of both counts of felonious assault. At sentencing, the trial court merged the second felonious assault count (serious physical harm) with the first felonious assault count (deadly weapon) and imposed a total prison sentence of six years.

{¶ 19} Elliott now appeals from the trial court's decision to not instruct the jury on aggravated assault, raising one assignment of error for review.

**Assignment of Error**

{¶ 20} Elliott's sole assignment of error is as follows:

APPELLANT WAS DENIED THE RIGHT TO INSTRUCT THE JURY ON AN

INFERIOR DEGREE OFFENSE OF AGGRAVATED ASSAULT.

{¶ 21} Under his single assignment of error, Elliott contends the trial court erred in failing to instruct the jury on aggravated assault. Specifically, Elliott claims there was sufficient evidence of serious provocation introduced at trial warranting the instruction.

{¶ 22} "When reviewing the trial court's jury instructions, the proper standard of review is whether the trial court's decision to give or exclude a particular jury instruction was an abuse of discretion under the facts and circumstances of the case." (Citation omitted.) *State v. Fair*, 2d Dist. Montgomery No. 24388, 2011-Ohio-4454, ¶ 65. "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary." (Citation omitted.) *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34.

{¶ 23} A trial court need only give those instructions that are relevant and necessary for the jury to weigh all of the evidence. *State v. Comen*, 50 Ohio St.3d 206, 553 N.E.2d 640 (1990). A defendant is only entitled to have his proposed jury instructions given when they are correct statements of the law, pertinent to the evidence in the record or to material issues, and are timely presented and not already included in the substance of the jury charge. *State v. Guster,* 66 Ohio St.2d 266, 269, 421 N.E.2d 157 (1981).

**{¶ 24}** Here, the trial court correctly concluded that aggravated assault is not a lesser-included offense of felonious assault. Rather, aggravated assault is an offense of inferior degree to felonious assault since its elements are identical to those of felonious assault, except for the additional mitigating element of serious provocation. *State v. Deem*, 40 Ohio St.3d 205, 211, 533 N.E.2d 294 (1988). In *State v. Thornton,* 2d Dist. Montgomery No. 20652, 2005-Ohio-3744*,* we stated the following test for determining whether a jury instruction on aggravated assault is warranted:

> If a defendant, who is charged with felonious assault, presents sufficient evidence of serious provocation, the trial court must instruct the jury on aggravated assault.
>
> *State v. Wong* (1994), 95 Ohio App.3d 39, 641 N.E.2d 1137. In analyzing whether an aggravated assault instruction is appropriate, the trial court must first determine whether based on an objective standard if the alleged provocation was reasonably sufficient to bring on a sudden fit of rage. *State v. Shane* (1992), 63 Ohio St.3d 630, 634, 590 N.E.2d 272. An aggravated assault instruction is only appropriate when the victim has caused serious provocation. Serious provocation is provocation that is "sufficient to arouse the passion of an ordinary person beyond the power of his or her control." *Id*. at 635, 590 N.E.2d 272. Additionally, serious provocation has been described as provocation that is "reasonably sufficient to bring on extreme stress and * * * to incite or to arouse the defendant into using deadly force." *State v. Deem* (1988), 40 Ohio St.3d 205, 533 N.E.2d 294. Classic examples of serious provocation are assault and battery, mutual combat, illegal arrest and discovering a spouse in the act of adultery.

*Shane*, supra at 635, 590 N.E.2d 272.

*Thornton* at ¶ 50.

**{¶ 25}** In *Thornton*, we also explained that:

If the objective standard is met, then the court must continue on to determine under a subjective standard whether this defendant was actually, "under the influence of sudden passion or in a sudden fit of rage." *Shane*, supra at 634, 590 N.E.2d 272. The emotional and mental state of the defendant and the conditions and circumstances that surround him at the time are only considered during this subjective stage of the analysis. *Id*.

*Thornton* at ¶ 51.

**{¶ 26}** "When analyzing the subjective prong of the test, '[e]vidence supporting the privilege of self-defense, i.e., that the defendant feared for his own personal safety, does not constitute sudden passion or fit of rage.' " *State v. Harding*, 2d Dist. Montgomery No. 24062, 2011-Ohio-2823, ¶ 43, quoting *State v. Stewart*, 10th Dist. Franklin No. 10AP-526, 2011-Ohio-466, ¶ 13. (Other citations omitted.) In other words, "[f]ear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage." (Citations omitted.) *State v. Mack*, 82 Ohio St.3d 198, 201, 694 N.E.2d 1328 (1998).

**{¶ 27}** In this case, the evidence concerning provocation is limited to Elliott's and McKee's testimony. The parties do not dispute that Elliott and McKee engaged in a physical fight inside the van being driven by Elliott, that the van crashed, and the two men tumbled outside and continued to fight with each other in a field. Additionally, there is no dispute that Elliott eventually got back in the van and ran over McKee.

{¶ 28}   The testimony differs in that McKee testified that Elliott was the aggressor, as he claimed that Elliott randomly struck him in the head as he was texting on his phone.   Pursuant to McKee's version of events, there was absolutely no provocation on his part that would have incited a sudden passion or fit of rage in Elliott causing him to strike and run over McKee.

{¶ 29}   However, according to Elliott, McKee was the initial aggressor.   Elliott testified that McKee became angry about some money that was owed to him and started the fight by pushing his head while he was driving.   Elliott also claimed McKee pointed a firearm at him.

{¶ 30}   In his appellate brief, Elliott argues that evidence of serious provocation was present because he and McKee engaged in mutual combat and also because McKee pointed a gun at him.   It should be noted that no gun was ever found on McKee or at the scene of the incident. However, even if McKee had pointed a gun at Elliott, and we determined that this conduct and their mutual combat met the objective prong of the provocation analysis, the record does not establish that Elliott was subjectively under the influence of sudden passion or in a sudden fit of rage as he beat McKee and ran him over.   Rather, Elliott's testimony indicated that McKee was enraged, and that Elliott underwent an adrenaline rush from fighting and was motivated by fear and self-preservation when he ran McKee over with his van.

{¶ 31}   Specifically, Elliott testified that:

When I seen [sic] that pistol it was automatically life for life situation, you know, it was like you know, and your adrenaline is going so bad.   I mean, we just fought so your adrenaline is already out of hand, you know.   But was [sic] no way if I put it in reverse that gives a man any amount of time to just unload, you know.   If I stop and, you know, what's going to happen now?   We just fought, you know.

If I get back out of the car is he going to shoot me, you know, what is he going to

do, now he's in a rage. But my very first instinct was I just hit the gas[.]

* * *

It's kind of crazy, you know, you get into life for life situation, you know, you

don't know who's going to live or die, you know, at this moment. You know,

you just-all you want to know is you want to get up out of there pretty quick, you

know, get away from it before you get hurt, you know.

* * *

–my whole thing was to avoid getting shot at the moment, right.

* * *

You know, I just ran over–it's the first time in my life. I just don't run over

people every day in my life; that was the very first time. I was scared.

Trial Trans. Vol. II (Jan. 29, 2013), p. 262-266.

**{¶ 32}** The foregoing testimony indicates Elliott's actions were based on fear and self-defense. There is no testimony in the record indicating Elliott was overcome by sudden passion or a fit of rage. As noted earlier, fear is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage. *Mack*, 82 Ohio St.3d at 201, 694 N.E.2d 1328. Because there is no evidence of the subjective prong of the provocation analysis, the trial court did not act unreasonably, arbitrarily, or unconscionably when it denied Elliott's request for an instruction on aggravated assault. *See Harding*, 2d Dist. Montgomery No. 24062, 2011-Ohio-2823 at ¶ 44-47 (the trial court did not abuse its discretion when it determined there was insufficient evidence to consider the offense of aggravated assault, because

even assuming the defendant satisfied the objective prong of the provocation test, he failed to satisfy the subjective prong, as there was no evidence that the defendant acted out of rage or passion when he stabbed the victims, and the defendant also testified that he was motivated by fear and acted in self-defense).

{¶ 33}   Elliott's sole assignment of error is overruled.


## Conclusion

{¶ 34}   Having overruled Elliott's sole assignment of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FROELICH, P.J. and HALL, J., concur.


Copies mailed to:

Mathias H. Heck
Kirsten A. Brandt
Charles W. Slicer, III
Hon. Timothy N. O'Connell