[Cite as *State v. Midkiff*, 2022-Ohio-4004.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2021-CA-39 |
| | : | |
| v. | : | Trial Court Case No. 2021-CR-214 |
| | : | |
| MICHAEL MIDKIFF | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 10th day of November, 2022.

. . . . . . . . . . .

IAN A. RICHARDSON, Atty. Reg. No. 0100124, Assistant Prosecuting Attorney, Clark County Prosecutor's Office, Appellate Division, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
    Attorney for Plaintiff-Appellee

APRIL F. CAMPBELL, Atty. Reg. No. 0089541, 46½ North Sandusky Street, Delaware, Ohio 43015
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

EPLEY, J.

{¶ 1} Defendant-Appellant Michael Midkiff appeals from his conviction after he was found guilty of felonious assault by a jury and sentenced to 7 to 10½ years in prison. For the reasons that follow, the trial court's judgment will be affirmed.

## I.        Facts and Procedural History

{¶ 2} Midkiff and Rachel Skabla were long-time family friends and, from time-to-time, roommates. Midkiff was several decades Skabla's senior and tried to look out for her well-being, especially considering Skabla's admitted substance abuse issues. Despite obvious affection for each other as expressed by their trial testimony, Skabla told the jury that at times Midkiff was "dangerously obsessed" with her and that it would sometimes manifest as jealousy. Midkiff himself admitted that he would have liked the relationship to be more than platonic but ultimately wanted what was best for Skabla.

{¶ 3} One of the people Midkiff was jealous of was Matthew Hiestand, an ex-boyfriend of Skabla. On March 27, 2021, Hiestand called Skabla and asked her to come over and clean his house. She agreed and testified that she "let it slip to [Midkiff] and he started going off like he was ranting and raving[.] * * * [S]o I had Matt pick me up, not on our corner, but at the corner down, so that there would be no interaction between [them]." Trial Tr. at 117.

{¶ 4} Skabla left the house to meet Hiestand; Midkiff followed on his bike, armed with two railroad spikes. He told the jury that he followed Skabla because he was concerned that she was going to use drugs and overdose. He claimed the spikes were for protection.

{¶ 5} Once Skabla got into Hiestand's truck, Midkiff began threatening Hiestand. Midkiff told Hiestand "if you let her in that truck, I'm gonna throw this railroad spike through your windshield." Trial Tr. at 160. Skabla testified that Midkiff told Hiestand that he wanted to fight, and Hiestand got out of the driver's seat to oblige. Before he could get the door closed, however, "[Midkiff] starting stabbing [Hiestand] with a railroad spike, like he didn't give him a chance to defend himself or nothing." Trial Tr. at 118.

{¶ 6} Despite the initial attack by Midkiff, Hiestand was able to turn around and fight back, eventually pinning Midkiff to the ground. Hiestand recounted that he tried to disarm Midkiff, but because he was covered in blood and was slippery, he was unsuccessful. Heistand called for help from a bystander, but the man would not come to Hiestand's aid, and he was forced to let Midkiff up. Midkiff rode away on his bike, leaving Hiestand bloodied on the sidewalk.

{¶ 7} Skabla called 911, and Hiestand was taken to the hospital; it took nine staples to close the wounds to his head. He testified that he now suffers from chronic migraines and that there are spots on his head where the hair will not grow back.

{¶ 8} Midkiff was charged with two counts of felonious assault, and the case proceeded to trial on June 14, 2021. The jury heard testimony from six witnesses for the State, including Skabla and Hiestand. The State also presented photos of Hiestand's injuries and the audio of the 911 call. Midkiff testified on his own behalf. Prior to the trial's conclusion, Midkiff's attorney asked for and was granted a self-defense instruction. The trial court, however, stated that it "included a duty to retreat because this happened March 27th. I believe that [the stand your ground] law came in effect April 6th." Trial Tr. at 165.

Defense counsel agreed with the court's assessment.

{¶ 9} After deliberating for approximately an hour, the jury returned with guilty verdicts; three days later, Midkiff was sentenced to 7 to 10½ years in prison. This appeal followed. Midkiff raises four assignments of error.

## II.     Stand Your Ground Instructions

{¶ 10} In his first assignment of error, Midkiff argues that the trial court erred by not instructing the jury that he had no duty to retreat before acting in self-defense after the legislature changed the law prior to trial.

{¶ 11} It first must be noted that Midkiff did not object to the jury instructions at trial, and as a result, our review is limited to plain error. Plain error arises only when "but for the error, the outcome of the trial clearly would have been otherwise." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph two of the syllabus. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.* at paragraph three of the syllabus.

{¶ 12} Ohio's self-defense laws have been in a state of change over the last several years. In 2019, S.B. 228 came into effect, altering R.C. 2901.05 and making self-defense no longer an affirmative defense. Instead, the burden was shifted "from the defendant to the state to prove beyond a reasonable doubt that the accused did not use force in self-defense." *State v. Brooks*, Ohio Slip Opinion No. 2022-Ohio-2478, __ N.E.3d __, ¶ 6. Then, in April 2021, S.B. 175 took effect, amending R.C. 2901.09 to indicate that "a person has no duty to retreat before using self-defense * * * if that person is in a place

in which the person lawfully has a right to be." R.C. 2901.09(B). It further states that "[a] trier of fact shall not consider the possibility of retreat as a factor in determining whether or not a person who used force in self-defense * * * reasonably believed that the force was necessary to prevent injury, loss, or risk of life or safety." R.C. 2901.09(C). Simply put, the new "stand your ground" law removes, in most cases, the duty to retreat before using self-defense.

{¶ 13} Recently, in *State v. Degahson*, 2d Dist. Clark No. 2021-CA-35, 2022-Ohio-2972, this Court held that the "stand your ground" law's changes to R.C. 2901.09 do not apply retroactively to a defendant who committed his or her offense prior to April 6, 2021, but whose trial was held after that date. Hence, such a defendant is not entitled to a "stand your ground" jury instruction. *Id.* at ¶ 16-24. We reasoned that the amended language of R.C. 2901.09 was not and could not be made retroactive due to its substantive nature. *Id.* at ¶ 18-20. We further determined that R.C. 1.58 compelled the application of the old version of R.C. 2901.09. *Id.* at ¶ 22. *Accord State v. Dixon,* 2d Dist. Greene No. 2021-CA-29, 2022-Ohio-3157; *State v. Hurt*, 8th Dist. Cuyahoga No. 110732, 2022-Ohio-2039.

{¶ 14} The same analysis applies here. Midkiff attacked Hiestand on March 27, 2021, prior to the effective date of the new law. Accordingly, the old version of R.C. 2901.09 applied, and the trial court did not err by instructing the jury on the previous duty to retreat. Midkiff's first assignment of error is overruled.

### III.    Self-Defense Instructions

{¶ 15} In his second and third assignments of error, Midkiff avers that the trial court's self-defense instructions were faulty, conflicting, and confusing. We will address

these related claims together.

{¶ 16} A person may act in self-defense, defense of another, or defense of that person's home. R.C. 2901.05(B)(1). To warrant an instruction of self-defense, there must be evidence presented that supports the conclusion that the defendant used force to defend himself or herself. *Id.* If the defendant puts forth evidence that he or she acted in self-defense, the prosecution must prove beyond a reasonable doubt that the accused did not use the force in self-defense. R.C. 2901.05(B)(1); *State v. Lovett*, 2d Dist. Montgomery No. 29240, 2022-Ohio-1693, ¶ 40.

{¶ 17} To establish self-defense, a defendant must introduce evidence showing that: (1) he or she was not at fault in creating the violent situation; (2) he or she had a bona fide belief that he or she was in imminent danger of bodily harm; and (3) he or she did not violate any duty to retreat or avoid the danger. *Id.* at ¶ 41, citing *State v. Brown*, 2017-Ohio-7424, 96 N.E.3d 1128, ¶ 24 (2d Dist.).

{¶ 18} In this case, the trial court instructed the jury:

The defendant is asserting the affirmative defense known as self-defense. While he is asserting it, he does not bear the burden of proving it. The burden remains upon the State to prove beyond a reasonable doubt each and every element of the offense and that the defendant's actions were not made in self-defense.

Trial Tr. at 183. As the State points out, it appears that Midkiff opposes the trial court's use of the word "and" to combine the explanations of what the State must prove in the case. According to the statute, the prosecution must prove every element of the

underlying crime beyond a reasonable doubt. R.C. 2901.05(A). Similarly, it must prove beyond a reasonable doubt that the accused did not act in self-defense. R.C. 2901.05(B)(1). By using the word "and," the trial court linked R.C. 2901.05(A) and 2901.05(B)(1) without using the exact wording of each statutory section. In our reading of the instruction, it is evident that the State had to prove – beyond a reasonable doubt – both the elements of the underlying crime and that Midkiff did not act in self-defense. It expressed the meanings of the different statutory sections by simply linking them together into one sentence. This was an accurate description of the law.

{¶ 19} Midkiff also argues that the trial court incorrectly instructed the jury on the State's burden of proof as to verdicts. Here, the court used the same approach of combining R.C. 2901.05(A) and R.C. 2901.05 (B)(1) by using the conjunction "and." It stated:

> If you find that the State proved beyond a reasonable doubt all the essential
>
> elements of felonious assault and that the actions of the defendant were not
>
> made in self-defense, then your verdict must be guilty.

Trial Tr. at 185. Conversely, when describing what the jury must find to reach a *not* guilty verdict, the court substituted the term "or" for "and." This, too, was a correct statement of law.

{¶ 20} Midkiff makes essentially the same arguments when contending, in his third assignment of error, that the jury instructions were conflicting and confusing. For the reasons just articulated, we find his argument to be unavailing.

{¶ 21} Finally, because Midkiff did not object to the jury instructions at trial, our

review is limited to plain error. We cannot say that the outcome of the trial would have been different had Midkiff's preferred instructions been given. The second and third assignments of error are overruled.

## IV.     Ineffective Assistance of Counsel

{¶ 22} In his fourth and final assignment of error, Midkiff contends that his trial counsel was ineffective because she failed to object to the jury instructions or verdict forms.

{¶ 23} To prevail on an ineffective assistance of counsel claim, Midkiff must prove that his attorney was ineffective under the standard test from *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The test has two parts. First, the defendant must show that counsel's performance was deficient. *Id*. at 687. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense." *Id*.

{¶ 24} As to the first prong, much deference is given to trial counsel. "[A] court must indulge in a strong presumption that the challenged action might be considered sound trial strategy. Thus, judicial scrutiny of counsel's performance must be highly deferential." *State v. Bird*, 81 Ohio St.3d 582, 585, 692 N.E.2d 1013 (1998).

{¶ 25} To demonstrate prejudice in the second prong, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1998), first paragraph of the syllabus.

**{¶ 26}** As to the argument that Midkiff's trial counsel was ineffective for failing to object to the jury instructions, we have already stated that there were no errors in the instructions, so this argument fails. Midkiff, however, raises an additional argument – that his trial counsel was ineffective for failing to object to the verdict form because, he argues, there should have been a separate form on the issue of self-defense. The problem with that argument, however, is that there is no rule that states there must be a separate finding or form for self-defense. *See State v. Jones,* 8th Dist. Cuyahoga No. 108371, 2020-Ohio-3367, ¶ 94 ("Jones has provided no legal authority that a jury must reject an affirmative defense of self-defense on a verdict form."); *State v. McClain*, 5th Dist. Guernsey No. 10-CA-10,2011-Ohio-1623, ¶ 40 (appellant provided no authority for the claim that a jury must reject an affirmative defense on a verdict form and the court found no law requiring it); *State v. Hobbs*, 5th Dist. Richland No. 2007-CA-0115, 2008-Ohio-4658, ¶ 18 (finding nothing that requires an affirmative defense to be set forth on verdict form); *State v. Reeds*, 11th Dist. Lake No. 2007-L-120, 2008-Ohio-1781, ¶ 62.

**{¶ 27}** Because there was no error on the part of Midkiff's trial attorney, his ineffective assistance of counsel claim must fail. The fourth assignment of error is overruled.

### V.     Conclusion

**{¶ 28}** The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and LEWIS, J., concur.

Copies sent to:

Ian A. Richardson
April F. Campbell
Hon. Douglas M. Rastatter