[Cite as *State v. Creamer*, 2025-Ohio-5430.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY

| | |
|---|---|
| STATE OF OHIO | : |
| | :    C.A. No. 2024-CA-75 |
|     Appellee | : |
| | :    Trial Court Case No. 2024 CR 0452 |
| v. | : |
| | :    (Criminal Appeal from Common Pleas |
| ROGER L. CREAMER AKA | :    Court) |
| ROGER LEE CREAMER, JR. | : |
| | :    **FINAL JUDGMENT ENTRY &** |
|     Appellant | :    **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on December 5, 2025, the judgment of the trial court is affirmed in part and modified in part, and the matter is remanded to the trial court for the sole purpose of issuing a new sentencing entry in accordance with this opinion.

Costs to be paid as follows: 50% by Appellee and 50% by Appellant.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

_____
ROBERT G. HANSEMAN, JUDGE

TUCKER, J., concurs.
HUFFMAN, J., concurring.

OPINION

ANTHONY D. MAIORANO, Attorney for Appellant
MEGAN A. HAMMOND, Attorney for Appellee

HANSEMAN, J.

{¶ 1} Appellant Roger L. Creamer, a.k.a. Roger Lee Creamer, Jr., appeals from his convictions in the Greene County Common Pleas Court after a jury found him guilty of felonious assault, having weapons while under disability, improperly handling firearms in a motor vehicle, aggravated assault, and multiple firearm specifications. In support of his appeal, Creamer claims that the trial court abused its discretion by denying his request for a trial continuance after his counsel reported testing positive for COVID-19. Creamer also claims that one of the prison sentences he received for a firearm specification is contrary to law because it violates R.C. 2929.14(B)(1)(e). Creamer further claims that the trial court committed plain error by failing to give a jury instruction on aggravated assault as an inferior-degree offense to felonious assault. In addition, Creamer claims that his trial counsel provided ineffective assistance by failing to request the aggravated assault instruction. For the reasons outlined below, the judgment of the trial court is affirmed in part and modified in part, and this matter is remanded to the trial court for the sole purpose of issuing a new sentencing entry in accordance with this opinion.

**Facts and Course of Proceedings**

{¶ 2} On August 8, 2024, a Greene County grand jury returned a four-count indictment charging Creamer with one second-degree felony count of felonious assault in violation of R.C. 2903.11(A)(2), one third-degree felony count of having weapons while under disability in violation of R.C. 2923.13(B), one fourth-degree felony count of improperly

handling firearms in a motor vehicle in violation of R.C. 2923.16(B), and one first-degree misdemeanor count of aggravated menacing in violation of R.C. 2903.21(A). The felonious assault count included a 54-month firearm specification under R.C. 2941.145(D) and a repeat violent offender specification under R.C. 2941.149(A). The counts for having weapons while under disability and improperly handling firearms in a motor vehicle also included 54-month firearm specifications. The indictment superseded Creamer's original indictment for the incident underlying this case, which was filed on May 3, 2024 under a separate case number.

{¶ 3} The indicted charges and specifications stemmed from allegations that on the evening of April 28, 2024, Creamer drove to the residence of Steven Jones in Xenia, Ohio, and approached Jones and Jones's friend, Howard Webb, with a handgun while Jones and Webb were sitting on Jones's back porch. Creamer pointed his handgun at both Jones and Webb and threatened to shoot them. Jones tried to take the handgun from Creamer, but Creamer gained control of the weapon and fired a shot at Jones and missed. Creamer ran back to his vehicle and fled the scene with his handgun.

{¶ 4} The trial on Creamer's original indictment was initially scheduled for July 8, 2024. At the request of the State, the trial date was continued to September 9, 2024. Thereafter, Creamer was indicted in the instant case, and his original case was superseded and dismissed. The court kept September 9 as the date for Creamer's trial on his subsequent indictment.

{¶ 5} On September 5, 2024, the trial court sua sponte continued the September 9 trial date due to a conflict in the court's schedule. The trial court indicated that an older criminal case had been scheduled for trial on the same day, so the trial court continued Creamer's trial to October 28, 2024.

3

{¶ 6} On October 23, 2024, Creamer filed a motion to continue his trial on grounds that his counsel had tested positive for COVID-19. The State did not oppose the motion. The trial court, however, denied the motion, and Creamer's trial went forward as scheduled on October 28.

{¶ 7} At trial, the State called eleven witnesses including the two victims, Jones and Webb. Creamer did not call any witnesses, nor did he testify in his defense. Instead, Creamer relied on the cross-examination of the State's witnesses. The jury found Creamer guilty of all the indicted charges and specifications. The matter proceeded to a sentencing hearing on December 9, 2024.

{¶ 8} At the sentencing hearing, the trial court imposed an indefinite minimum term of 8 years in prison to a maximum term of 12 years in prison for felonious assault. The trial court imposed a mandatory term of 54 months in prison for the associated firearm specification and a mandatory term of 3 years in prison for the associated repeat violent offender specification.

{¶ 9} For the third-degree felony count of having weapons while under disability, the trial court imposed 36 months in prison. Although the jury found Creamer guilty of the 54-month firearm specification attached to that offense, the trial court did not mention the specification or impose a prison term for it. When the State brought that omission to the trial court's attention at the sentencing hearing, the trial court stated that it was "going to leave [the sentence] the way it is." Sentencing Hearing Tr. 20. Accordingly, the trial court chose not to impose a prison term for the firearm specification attached to the count of having weapons while under disability.

{¶ 10} For the fourth-degree felony count of improperly handling firearms in a motor vehicle, the trial court imposed 18 months in prison plus a mandatory term of 54 months in

4

prison for the attached firearm specification. For the first-degree misdemeanor count of aggravated menacing, the trial court imposed 180 days in jail.

{¶ 11} The trial court ordered the definite prison terms imposed for having weapons while under disability, improperly handling firearms in a motor vehicle, and aggravated menacing to be served concurrently with the indefinite 8-to-12-year prison term imposed for felonious assault. The trial court also ordered the two 54-month prison terms imposed for the firearm specifications to be served consecutively to one another, prior and consecutively to the 3-year prison term for the repeat violent offender specification, and prior and consecutively to the prison terms imposed for the underlying offenses. The trial court's sentencing entry yielded an aggregate term of a minimum of 20 years in prison to a maximum of 24 years in prison (54 months + 54 months + 3 years + 8 to 12 years = 20 years to 24 years).

{¶ 12} Creamer now appeals from his convictions, raising four assignments of error for review.

**First Assignment of Error**

{¶ 13} Under his first assignment of error, Creamer claims that the trial court abused its discretion by denying his request for a trial continuance after his counsel reported testing positive for COVID-19. We disagree.

{¶ 14} "The determination whether to grant a continuance is entrusted to the broad discretion of the trial court." *State v. Froman*, 2020-Ohio-4523, ¶ 91, citing *State v. Unger*, 67 Ohio St.2d 65 (1981), syllabus. Therefore, "an appellate court may not reverse the denial of a continuance unless there has been an abuse of discretion." *State v. Sigurani*, 2025-Ohio-1573, ¶ 11 (2d Dist.). "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary." *State v. Darmond*, 2013-Ohio-966, ¶ 34. "An

5

abuse of discretion most often involves an unreasonable decision that is not supported by a sound reasoning process." *State v. McHenry*, 2021-Ohio-3118, ¶ 16 (2d Dist.), citing *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990). "Abuse-of-discretion review is deferential and does not permit an appellate court to simply substitute its judgment for that of the trial court." *Darmond* at ¶ 34, citing *State v. Morris*, 2012-Ohio-2407, ¶ 14.

{¶ 15} "When determining whether a court's discretion to deny a continuance has been abused, a reviewing court must balance the interests of judicial economy and justice against any potential prejudice to the moving party." *State v. Hibbler*, 2002-Ohio-4464, ¶ 9 (2d Dist.); *Unger* at 67. In addition, "[s]everal factors can be considered: the length of the delay requested, prior continuances, inconvenience, the reasons for the delay, whether the defendant contributed to the delay, and other relevant factors." *State v. Landrum*, 53 Ohio St.3d 107, 115 (1990), citing *Unger* at 67-68; *accord Froman* at ¶ 91.

{¶ 16} Creamer's trial counsel requested the continuance at issue five days before the trial due to counsel testing positive for COVID-19. In support of the motion, counsel asserted that he would not be able to adequately prepare for trial due to his illness. Counsel also asserted that, at the time in question, the Centers for Disease Control and Prevention ("CDC") recommended that individuals who had tested positive for COVID-19 quarantine themselves for a minimum of 5 days plus another 24 hours if the infected individual had a fever beyond the 5-day quarantine period.

{¶ 17} This court, however, takes judicial notice of the fact that in March 2024, the CDC had announced that people who tested positive for COVID-19 no longer needed to stay in isolation for five days, but could return to work or regular activities if their symptoms were mild and improving and if it had been a day since they had a fever. CDC, *CDC Updates*

6

*and Simplifies Respiratory Virus Recommendations* (Mar. 1, 2024), https://www.cdc.gov/ media/releases/2024/p0301-respiratory-virus.html (archived Dec. 1, 2025) [https:// perma.cc/BFD4-78KW]; Health Policy Institute of Ohio, *CDC Officially Drops Covid 5-day Isolation Guidance* (Mar. 1, 2024), https://www.healthpolicyohio.org/health-policy-news/2024/03/01/cdc-officially-drops-covid-5-day-isolation-guidance (accessed Oct. 20, 2025). In this case, Creamer's counsel requested the trial continuance at issue on October 23, 2024, and at that time, the CDC no longer recommended a five-day quarantine period. Furthermore, counsel did not indicate when he had tested positive for COVID-19, how severe his symptoms were, or specifically how the illness had impaired his ability to prepare for trial.

**{¶ 18}** Significantly, Creamer does not even argue that the denial of the continuance resulted in his counsel being ill-prepared for trial. Instead, Creamer claims that the denial of the continuance resulted in his counsel being unable to speak clearly and audibly to the jury. In support of this claim, Creamer points to one instance on the second day of trial when a witness asked his counsel to "speak up a little bit," and counsel responded, "[s]orry, I'm struggling with the tail end of a cold here." Trial Tr. 126. This singular instance, though, does not establish that the jury could not understand Creamer's counsel during trial or that his counsel was unable to speak clearly and audibly. Indeed, the jury never indicated that it had difficulty hearing or understanding Creamer's counsel. Creamer has failed to demonstrate any prejudice arising from the denial of the requested continuance.

**{¶ 19}** We further note that Creamer's trial had already been continued on two occasions and that the requested continuance would have resulted in a great inconvenience to the State and the eleven witnesses that the State had subpoenaed for trial. Given that great inconvenience, the interest in promoting judicial economy, the lack of prejudice to

7

Creamer, the nonexistent five-day quarantine period, and the failure of counsel to indicate when he had tested positive for COVID-19, the severity of his symptoms, and how his illness would have inhibited his trial preparation, it was not unreasonable for the trial court to deny the requested continuance and to proceed with trial as scheduled. The trial court did not abuse its discretion in denying the continuance.

{¶ 20} Creamer's first assignment of error is overruled.

## Second Assignment of Error

{¶ 21} Under his second assignment of error, Creamer claims that the 54-month prison term imposed for the firearm specification attached to the offense of improperly handling firearms in a motor vehicle was contrary to law because it violated R.C. 2929.14(B)(1)(e). Although the State initially opposed Creamer's argument in its appellate brief, upon further consideration, the State conceded error at oral argument. Upon review, we agree that the sentence is contrary to law.

{¶ 22} Under R.C. 2953.08(G)(2), this court may vacate or modify a felony sentence only if we "determine[ ] by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 2016-Ohio-1002, ¶ 1. The sentencing issue raised by Creamer does not relate to any of the findings under the relevant statutes listed under R.C. 2953.08(G)(2); the only issue is whether Creamer's sentence is "otherwise contrary to law." The phrase "otherwise contrary to law" means "in violation of statute or legal regulations at a given time." (Cleaned up.) *State v. Bryant*, 2022-Ohio-1878, ¶ 22.

{¶ 23} R.C. 2929.14(B)(1)(a) governs the imposition of prison terms for firearm specifications. The statute provides, in pertinent part, the following:

8

*Except as provided in division (B)(1)(e) of this section*, if an offender who is convicted of or pleads guilty to a felony also is convicted of or pleads guilty to a specification of the type described in section 2941.141, 2941.144, or 2941.145 of the Revised Code, the court shall impose on the offender one of the following prison terms:

. . .

(v) A prison term of fifty-four months if the specification is of the type described in division (D) of section 2941.145 of the Revised Code . . . ;

(Emphasis added.) R.C. 2929.14(B)(1)(a).

{¶ 24} As indicated in the foregoing statutory language, section (B)(1)(e) of the statute provides certain exceptions to when a prison term can be imposed for one of the listed specifications. That section of the statute provides that the

*court shall not impose any of the prison terms described in division (B)(1)(a) or (b) of this section upon an offender for a violation of* section 2923.122 that involves a deadly weapon that is a firearm other than a dangerous ordnance, *section 2923.16*, or section 2923.121 of the Revised Code.

(Emphasis added.) R.C. 2929.14(B)(1)(e).

{¶ 25} In this case, there is no dispute that the jury found Creamer guilty of improperly handling firearms in a motor vehicle in violation of R.C. 2923.16(B) and its accompanying firearm specification. There is also no dispute that the trial court imposed a 54-month prison term for the firearm specification. R.C. 2929.14(B)(1)(e), however, prohibits a sentencing court from imposing a prison term for such a specification when it is attached to a violation of R.C. 2923.16. Because of this, the trial court's decision to impose a 54-month prison term for the firearm specification was contrary to law.

{¶ 26} Creamer's second assignment of error is sustained.

**Third Assignment of Error**

{¶ 27} Under his third assignment of error, Creamer claims that the trial court erred by failing to give a jury instruction on aggravated assault as an inferior-degree offense to felonious assault. Because his trial counsel did not request an aggravated assault instruction at trial, Creamer concedes that this issue may be reviewed only for plain error. *See State v. Hodge*, 2022-Ohio-1780, ¶ 24 (2d Dist.); *State v. Midkiff*, 2022-Ohio-4004, ¶ 11 (2d Dist.). "Plain error arises only when 'but for the error, the outcome of the trial clearly would have been otherwise.'" *Midkiff* at ¶ 11, quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph two of the syllabus. "'Notice of plain error . . . is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *Id.*, quoting *Long* at paragraph three of the syllabus.

{¶ 28} "In a proper case, a jury may consider, in addition to the offense actually indicted, inferior degrees of the indicted offense." *State v. Beatty-Jones*, 2011-Ohio-3719, ¶ 20 (2d Dist.), citing *State v. Deem*, 40 Ohio St.3d 205 (1988), paragraph one of the syllabus. "An offense is of an inferior degree if its elements are 'identical to or contained within the indicted offense, except for one or more additional mitigating elements.'" *Id.*, quoting *Deem* at paragraph two of the syllabus.

{¶ 29} Felonious assault in violation of R.C. 2903.11(A)(2) occurs when a person knowingly causes or attempts to cause physical harm to another by means of a deadly weapon or dangerous ordnance. Aggravated assault in violation of R.C. 2903.12(A)(2) occurs when a person knowingly causes or attempts to cause physical harm to another by means of a deadly weapon or dangerous ordinance "while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation

10

occasioned by the victim that is reasonably sufficient to incite the person into using deadly force." R.C. 2903.12(A)(2). Therefore, "as statutorily defined, the offense of aggravated assault is an inferior degree of the indicted offense—felonious assault—since its elements are identical to those of felonious assault, except for the additional mitigating element of serious provocation." *Deem* at 210-211.

{¶ 30} "[I]n a trial for felonious assault, where the defendant presents sufficient evidence of serious provocation . . . an instruction on aggravated assault . . . *must* be given to the jury." (Emphasis in original.) *Id*. at 211; *accord State v. Mack,* 82 Ohio St.3d 198, 200 (1998); *State v. Koch*, 2019-Ohio-4099, ¶ 90 (2d Dist.). "Provocation, to be serious, must be reasonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or arouse the defendant into using deadly force." *Deem* at paragraph five of the syllabus. "In determining whether the provocation was reasonably sufficient to incite the defendant into using deadly force, the court must consider the emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time." *Id*.

{¶ 31} "In the context of aggravated assault, the evaluation of whether provocation is reasonably sufficient to constitute serious provocation is a two-part analysis." *Koch* at ¶ 91, citing *Mack* at 201. "First, 'an objective standard must be applied to determine whether the alleged provocation is reasonably sufficient to bring on a sudden passion or fit of rage.'" *State v. Dyer*, 2024-Ohio-3421, ¶ 85 (2d Dist.), quoting *Mack* at 201. "The provocation must be 'sufficient to arouse the passions of an ordinary person beyond the power of his or her control.'" *Id*., quoting *State v. Shane*, 63 Ohio St.3d 630, 635 (1992). "If the objective standard is satisfied, the inquiry becomes a subjective one to determine whether the

11

defendant in a particular case 'actually was under the influence of sudden passion or in a sudden fit or rage.'" *Id*., quoting *Mack* at 201.

{¶ 32} Creamer argues that there was sufficient evidence of serious provocation for the trial court to instruct the jury on aggravated assault as an inferior-degree-offense to felonious assault because the evidence established that Jones had called him a "pussy little bitch," told him to "put the gun down, . . . we'll deal with it like a man," and attempted to take the handgun from him.

{¶ 33} The portion of Creamer's argument claiming that Jones's words constituted serious provocation lacks merit because "[w]ords alone will not constitute reasonably sufficient provocation to incite the use of deadly force in most situations." *Shane* at paragraph two of the syllabus. Creamer's claim that Jones's act of grabbing his handgun constituted serious provocation also lacks merit. The evidence established that Creamer was the initial aggressor and that Jones grabbed the handgun from Creamer in self-defense. It would be illogical to deem Jones's defensive action as serious provocation so as to excuse Creamer's subsequent act of shooting at him.

{¶ 34} As a further matter, Creamer did not testify at trial, and there is no evidence establishing that he was subjectively acting under serious provocation when Jones grabbed his handgun. *See State v. Martin,* 2012-Ohio-732, ¶ 9 (2d Dist.) ("[e]ven if there had been sufficient evidence of provocation in an objective sense, the defendant did not testify and there is absolutely no evidence he was subjectively acting under serious provocation"). In other words, nothing in the record establishes that Creamer was actually under the influence of sudden passion or in a sudden fit of rage when Jones went for the handgun. Given the evidence, it is possible that Creamer was acting out of fear when he fired the shot at Jones, and "[f]ear alone is insufficient to demonstrate the kind of emotional state necessary to

12

constitute sudden passion or fit of rage." *Mack*, 82 Ohio St.3d at 201; *accord State v. Elliott*, 2014-Ohio-4958, ¶ 32 (2d Dist.).

{¶ 35} Because the evidence failed to establish the serious provocation element of aggravated assault, we find that the trial court did not err, plainly or otherwise, by failing to instruct the jury on that offense. *See Elliott* at ¶ 32; *State v. Harding*, 2011-Ohio-2823, ¶ 44-47 (2d Dist.); *Martin* at ¶ 9.

{¶ 36} Creamer's third assignment of error is overruled.

**Fourth Assignment of Error**

{¶ 37} Under his fourth assignment of error, Creamer claims that his trial counsel provided ineffective assistance by failing to request a jury instruction on aggravated assault as an inferior-degree offense to felonious assault. We disagree.

{¶ 38} This court reviews alleged instances of ineffective assistance of trial counsel under the two-prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which has been adopted by the Supreme Court of Ohio in *State v. Bradley*, 42 Ohio St.3d 136 (1989). Under those cases, in order to prevail on an ineffective assistance claim, Creamer must show that his trial counsel rendered deficient performance and that counsel's deficient performance prejudiced him. *Strickland* at paragraph two of the syllabus; *Bradley* at paragraph two of the syllabus. The failure to make a showing of either deficient performance or prejudice defeats a claim of ineffective assistance of counsel. *Strickland* at 697.

{¶ 39} To establish deficient performance, Creamer must show that his trial counsel's performance fell below an objective standard of reasonable representation. *Id*. at 688. When evaluating counsel's performance, a reviewing court "must indulge in a strong presumption

13

that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689.

{¶ 40} To establish prejudice, Creamer must show that there is "a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Hale*, 2008-Ohio-3426, ¶ 204, citing *Strickland* at 687-688 and *Bradley* at paragraph two of the syllabus. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Bradley* at 142, quoting *Strickland* at 694.

{¶ 41} When reviewing ineffective assistance claims, we will not second-guess trial strategy decisions. *State v. Mason*, 82 Ohio St.3d 144, 157 (1998); *Strickland*, 466 U.S. at 689. "'[T]rial counsel is allowed wide latitude in formulating trial strategy.'" (Bracketed text in original.) *State v. Collins*, 2011-Ohio-4475, ¶ 15 (2d Dist.), quoting *State v. Olsen*, 2011-Ohio-3420, ¶ 121 (2d Dist.). Therefore, "[d]ebatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if, in hindsight, it looks as if a better strategy had been available." *State v. Conley*, 2015-Ohio-2553, ¶ 56 (2d Dist.), citing *State v. Cook*, 65 Ohio St.3d 516, 524-525 (1992).

{¶ 42} "'[A]s a general rule, the decision of whether or not to request a particular jury instruction is a matter of trial strategy and, for that reason, will not substantiate a claim of ineffective assistance of counsel.'" (Bracketed text in original.) *State v. Fletcher*, 2024-Ohio-5117, ¶ 74 (2d Dist.), quoting *State v. Ferrell*, 2020-Ohio-6879, ¶ 49 (10th Dist.); *accord State v. Conway*, 2006-Ohio-2815, ¶ 111 ("counsel's decision not to request a jury instruction falls within the ambit of trial strategy"); *State v. Morris*, 2005-Ohio-1136, ¶ 100 (9th Dist.) ("[a]n attorney's decision not to request a particular jury instruction is a matter of trial strategy and does not establish ineffective assistance of counsel"); *State v. Pennington*,

2011-Ohio-4445, ¶ 28 (2d Dist.) ("the request of [jury] instructions are matters of trial strategy").

{¶ 43} In this case, counsel's decision not to request a jury instruction on aggravated assault was a matter of trial strategy that cannot form the basis of an ineffective assistance claim. Also, counsel's decision not to request an aggravated assault instruction cannot constitute deficient performance since the evidence did not warrant giving such an instruction. There was no evidence establishing that Creamer was acting under serious provocation as required for aggravated assault. Counsel cannot be deemed ineffective for failing to request a jury instruction that was not warranted by the evidence. *See State v. Blanton*, 2023-Ohio-89, ¶ 86 (2d Dist.); *State v. Woullard*, 2004-Ohio-3395, ¶ 44 (2d Dist.) ("a claim of ineffective assistance of counsel cannot be predicated upon a matter which did not constitute error"), citing *State v. Getsy*, 84 Ohio St.3d 180 (1998).

{¶ 44} Creamer's fourth assignment of error is overruled.

### Conclusion

{¶ 45} Having overruled Creamer's first, third, and fourth assignments of error and having sustained Creamer's second assignment of error, the judgment of the trial court is affirmed in part and modified in part. This matter is remanded to the trial court for the sole purpose of issuing a new sentencing entry that modifies Creamer's sentence to eliminate the 54-month prison term imposed for the firearm specification attached to the count of improperly handling firearms in a motor vehicle. Given that modification, the new sentencing entry should reflect that Creamer is to serve a total, aggregate sentence of a minimum of 15.5 years to a maximum of 19.5 years in prison. In all other respects, Creamer's judgment of conviction is affirmed.

15

{¶ 46} We note that on July 14, 2025, the parties filed a joint motion requesting this court to remand Creamer's case to the trial court for the limited purpose of amending the sentencing entry to reflect that: (1) Creamer was convicted of the 54-month firearm specification attached to the count of having weapons while under disability; and (2) the trial court chose not to impose a prison term for that specification. After taking the matter under advisement, we find that the record supports both of these facts and that the trial court inadvertently omitted them from the sentencing entry. Pursuant to Crim.R. 36, "[c]lerical mistakes in judgments, orders, or other parts of the record, and errors in the record arising from oversight or omission, may be corrected by the court at any time." As a result, the parties' joint motion to amend the sentencing entry is well-taken. Therefore, on remand, when issuing a new sentencing entry that modifies Creamer's sentence as stated above, the trial court shall also include the following information in the entry: (1) Creamer was convicted of the 54-month firearm specification attached to the count of having weapons while under disability and (2) the trial court did not impose a prison term for that specification.

. . . . . . . . . . . . .

HUFFMAN, J., concurs:

{¶ 47} I concur with the majority opinion but write separately because the information that the majority orders the trial court to include in its amended sentencing entry overlooks that once Creamer was convicted of felonious assault and having weapons while under disability, both with attendant firearm specifications, the trial court was required by law to impose consecutive sentences on both specifications. R.C. 2929.14(B)(1)(a)(v) requires a 54-month prison term for firearm specifications under R.C. 2941.145(D), the specific specifications that enhanced Count 1 (felonious assault) and Count 2 (having weapons while under disability) in Creamer's indictment.

16

**{¶ 48}** R.C. 2929.14(B)(1)(a) states that if an offender is convicted of or pleads guilty to a felony and a firearm specification, the court "shall impose" a prison term on the specification. The mandatory term "shall be served consecutively to and prior to any prison term imposed for the underlying felony, and consecutively to any other prison term or mandatory prison term previously or subsequently imposed upon the offender." *State v. Davis*, 2025-Ohio-1760, ¶ 12 (2d Dist.), citing R.C. 2929.14(C)(1)(a).

**{¶ 49}** R.C. 2929.14(B)(1)(b) states that "a court shall not impose more than one prison term on an offender under division (B)(1)(a) of this section for felonies committed as part of the same act or transaction." "'Same act or transaction does not have the same meaning as course of criminal conduct.'" *State v. Young*, 2011-Ohio-747, ¶ 54 (2d Dist.), quoting *State v. Walker*, 2000 WL 873222, *12 (2d Dist. June 30, 2000). Same act or transaction "means a series of continuous acts bound together by time, space and purpose, and directed toward a single objective." *Walker* at *12, citing *State v. Wills,* 69 Ohio St.3d 690 (1994). "This is a broader concept than the separate animus test associated with R.C. 2941.25," the allied offenses statute. *Id.,* citing *State v. White*, 71 Ohio App.3d 550 (4th Dist. 1991).

**{¶ 50}** *Young* quoted *State v. Rice,* 69 Ohio St.2d 422 (1982), which determined that "'for purposes of R.C. 2923.13 [having weapons while under disability], the elements of proof for the violation were provided at the time the appellant, a person under disability, originally acquired this firearm,'" while the "'conduct of the appellant in carrying a concealed handgun under the front seat of the automobile constituted a separate and distinct act from that of his previously acquiring and possessing such handgun.'" *Young* at ¶ 47, quoting *Rice* at 426-427. In my view, Creamer necessarily acquired and possessed the weapon while under

17

disability sometime before using it to commit felonious assault, and the offenses were not part of the same transaction.

{¶ 51} Based on the foregoing and the record in this case, the trial court was required to impose a consecutive prison term for the firearm specification attendant to the having weapons while under disability offense in addition to the sentence imposed for the specification attendant to the felonious assault offense. I realize that in the absence of an appeal by the State, the issue is waived, but I write separately to avoid any future confusion as to whether a trial court must impose a prison term for a firearm specification under circumstances like those presented in this case.

TUCKER, J., concurs:

{¶ 52} I concur in Judge Hanseman's opinion and in Judge Huffman's concurring opinion.